UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN PULLMAN,

    Plaintiff,

v.                          Case No. 8:22-cv-2720-VMC-JSS

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER

This matter is before the Court on consideration of Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 34), filed on February 7, 2023. Plaintiff Lauren Pullman responded on February 28, 2023. (Doc. # 41). For the reasons that follow, the Motion is denied.

## I.  Background

This action arises out of Defendant Wells Fargo's allegedly inaccurate reporting of its tradelines on Plaintiff Lauren Pullman's Equifax and Trans Union consumer credit files. (Doc. # 30 at ¶¶ 6, 9). Wells Fargo reports its tradelines on Ms. Pullman's Experian and Trans Union credit disclosures. (Id. at ¶¶ 7-8).

1

After discovering that she was a victim of identity theft, Ms. Pullman filed a police report with the Tampa Police Department on July 19, 2021, documenting the theft of her identity. (Id. at ¶¶ 9–10). Ms. Pullman received her Trans Union and Wells Fargo credit disclosures on September 8 and September 9, 2022, respectively, and noticed a false tradeline. (Id. ¶¶ 11–12). The account reflected on that tradeline does not belong to Ms. Pullman, but rather was a result of her identity theft. (Id. at ¶ 9).

Subsequently, on or about September 19, 2022, Ms. Pullman, through Credit Repair Lawyers of America, submitted letters to Trans Union and Experian disputing the false tradeline. (Id. at ¶ 13). In her dispute letters, Ms. Pullman explained that the account reflected by the false tradeline is fraudulent and does not belong to her. (Id. at ¶ 14). Ms. Pullman attached a copy of the Tampa Police Department report to the letters and asked Trans Union and Experian to delete the false tradeline. (Id.).

Upon receipt of Ms. Pullman's dispute letters, Trans Union and Experian forwarded Ms. Pullman's consumer dispute to the furnishers, which includes Wells Fargo. (Id. at ¶¶ 6, 15). The furnishers received Ms. Pullman's consumer dispute from Trans Union and Experian. (Id. at ¶ 16). However, Ms.

Pullman received her Trans Union and Experian credit disclosures on November 7 and 8, 2022, respectively, which showed that Wells Fargo failed or refused to delete the false tradeline. (Id. at ¶¶ 18-19).

As a result of the false and misleading tradeline, Ms. Pullman's credit score has dropped, which makes it harder for her to obtain jobs, housing, and meet living expenses. (Id. at ¶ 20). Consequently, Ms. Pullman has suffered stress and anxiety resulting in chest pains and loss of sleep. (Id. ¶ 21). Ms. Pullman has also needed to take medication for anxiety and depression. (Id.). Additionally, due to Wells Fargo's failure to correct the error in her credit files, Ms. Pullman's credit card limits have been lowered. (Id.).

Ms. Pullman filed the instant action on November 29, 2022, asserting claims under the Fair Credit Reporting Act (FCRA) against several defendants. (Doc. # 1). Ms. Pullman filed her amended complaint on January 25, 2023. (Doc. # 30). Counts I and II of the amended complaint pertain to Wells Fargo. (Id. at ¶¶ 5-7). In Count I, Ms. Pullman alleges that Wells Fargo negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of her dispute. (Id. at ¶ 23). In Count II, Ms. Pullman alternatively alleges that Wells Fargo willfully violated 15 U.S.C. § 1681s-2(b) by

failing to conduct a reasonable investigation of her dispute, entitling her to damages pursuant to 15 U.S.C. § 1681n. (Id. at ¶¶ 30, 33).

On February 7, 2023, Wells Fargo moved to dismiss the amended complaint (Doc. # 22), and Ms. Pullman has responded. (Doc. # 41). The Motion is now ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

4

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, and Rule 12(b)(1) permits a facial or factual attack. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, as here, the Court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013).

### III. **Analysis**

Wells Fargo contends that the amended complaint should be dismissed for two reasons. First, pursuant to Rule 12(b)(1), it argues that Ms. Pullman has not alleged a concrete injury and therefore lacks standing. (Doc. # 34 at

5

4). Second, Wells Fargo contends that Ms. Pullman has pled her FCRA claims in a conclusory fashion, and therefore has not stated a cause of action upon which relief can be granted. (Id.). The Court will address each argument in turn.

### A. Standing

As a threshold matter, Wells Fargo contends that Ms. Pullman lacks standing to bring her FCRA claims because she has not suffered a concrete injury. (Doc. # 34 at 4). In her amended complaint, Ms. Pullman alleges that because of Wells Fargo's conduct, she has experienced stress and anxiety, as well as a decline in her credit score, which has made it harder for her to obtain jobs, housing, and meet living expenses. (Doc. # 30 at ¶¶ 20-21). Wells Fargo contends that these alleged intangible injuries are not concrete because they are "merely conclusory." (Doc. # 34 at 7-8). As to Ms. Pullman's purported economic injuries, Wells Fargo contends such injuries are speculative because Ms. Pullman has not alleged specifically which jobs or housing she has been denied, or shown how her creditworthiness has been affected. (Id. at 7). Wells Fargo cites to Spokeo, Inc. v. Robins, 578 U.S. 330, 342 (2016), to support the contention that "not all [credit reporting] inaccuracies cause harm or present any material risk of harm."

The constitutional requirement of standing has three elements: plaintiff must have (1) suffered an injury, (2) that is fairly traceable to the conduct of the defendant, and (3) that is likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The injury in fact analysis requires an injury that is concrete and particularized, as well as actual or imminent. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000). For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 & n.1. To be concrete, the injury need not be tangible, but it must be real and not abstract. Michael v. HOVG, LLC, 232 F. Supp. 3d 1229, 1234 (S.D. Fla. 2017) (citing Spokeo, 136 S. Ct. at 1548-49).

In Spokeo, the Supreme Court determined that a "bare procedural violation" of the FCRA is insufficient to confer standing. Spokeo, 578 U.S. at 341. Instead, to determine whether an injury is sufficiently concrete to confer standing, the court must "consider whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and determine if Congress has

7

elevated the intangible harm to the status of a legally cognizable injury. Id.

Here, the harms alleged by Ms. Pullman are sufficiently concrete to confer Article III standing. First, Ms. Pullman has alleged that the inclusion of the false tradeline in her credit report has adversely affected her credit score. (Doc. # 30 at ¶ 20). A lower credit score, in turn, can mean that Ms. Pullman may be denied certain loans or be forced to pay higher interest rates to acquire such loans. The Eleventh Circuit has recognized that such economic harm is "a quintessential injury in fact." Pinson v. JPMorgan Chase Bank, N.A., 942 F.3d 1200, 1207 (11th Cir. 2019) (holding that plaintiff's allegations of economic harm in the form of lost credit opportunities and higher car insurance premiums were "specific enough for us to conclude Mr. Pinson plausibly suffered an injury traceable to JPMorgan Chase's conduct"). Indeed, here, Ms. Pullman has alleged that as a result of the false tradeline, her credit card limits have been lowered. (Doc. # 30 at ¶ 21). Thus, she has alleged that she has suffered economic harm from the Defendants' actions, which is sufficiently concrete to confer standing. See Forbes v. Concord Advice, LLC, No. 8:20-cv-405-VMC-AEP, 2020 WL 7421383, at *4 (M.D. Fla. May 5, 2020) (finding the

plaintiff's allegation that her credit score was adversely affected sufficiently concrete for the purpose of Article III standing).

Second, the Eleventh Circuit has recognized that the reporting of inaccurate information "has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts." Pedro v. Equifax, Inc., 868 F.3d 1275, 1279-80 (11th Cir. 2017); see Foster v. Santander Consumer USA, Inc., No. 1:18-cv-4146-WMR-JFK, 2019 WL 3490463, at *6 (N.D. Ga. May 29, 2019), report and recommendation adopted, No. 1:18-CV-04146-JPB, 2019 WL 8277254 (N.D. Ga. Oct. 15, 2019) (finding that because a furnisher's violation of Section 1681s-2(b) involves the reporting of inaccurate information, the plaintiff suffered a concrete injury by virtue of the continued reporting of inaccurate information). Here, Ms. Pullman has alleged that Wells Fargo's failure to conduct a reasonable reinvestigation of her dispute has led to inaccurate information being reflected on her credit report. Burrow v. Equifax Info. Servs., LLC, No. 1:18-cv-05134-JPB-LTW, 2019 WL 5417147, at *6 (N.D. Ga. Aug. 5, 2019) (finding the plaintiff had alleged a concrete injury because "the existence of the inaccurate

9

information on [the plaintiff's] [credit] report would establish standing by creating a material risk of false information being disseminated"), report and recommendation adopted, No. 1:18-CV-05134-JPB, 2019 WL 5410067 (N.D. Ga. Aug. 26, 2019). Because the reporting of inaccurate information inflicts upon a plaintiff the type of intangible harm contemplated by "both history and the judgment of Congress" as sufficient to convey plaintiff constitutional standing, Ms. Pullman has alleged that she has suffered a concrete injury. Pedro, 868 F.3d at 1279.

The Court finds that Ms. Pullman has sufficiently alleged facts in support of Article III standing.

### B.  Fair Credit Reporting Act Claims

#### i.  Negligent Violation

Ms. Pullman alleges that Wells Fargo negligently violated Section 1681s-2(b) by failing to conduct a reasonable investigation of Ms. Pullman's dispute, despite being provided with information regarding the theft of Ms. Pullman's identity. (Doc. # 30 at ¶¶ 23-24). Wells Fargo contends that Ms. Pullman has failed to state a claim for a negligent violation of Section 1681s-2(b) because she has not alleged specific facts demonstrating how Wells Fargo failed to follow reasonable procedures or conduct a reasonable

10

investigation after receiving notice of the identity theft. (Doc. # 34 at 14-15).

Section 1681s-2(b) outlines the duties of furnishers of information upon notice of dispute. It provides, in relevant part, that after receiving notice of a dispute, the furnisher shall "conduct an investigation with respect to the disputed information[.]" 15 U.S.C. § 1681s-2(b)(1)(A). The Eleventh Circuit has held that the furnisher's investigation must be reasonable. Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1301-02 (11th Cir. 2016).

Courts have found that plaintiffs have sufficiently pled a violation of Section 1681s-2(b) where the complaint includes allegations that the furnishers continued to report erroneous information to the credit reporting agencies despite being notified of a dispute. See, e.g., Campbell v. Equifax Info. Servs., LLC, No. 4:18-cv-53, 2019 WL 1332375, at *2 (S.D. Ga. Mar. 25, 2019) (denying a motion to dismiss a claim under the FCRA); Wikert v. Wells Fargo Bank, N.A., No. 3:11-cv-786-RBD-JK, 2012 WL 333787, at *2 (M.D. Fla. Feb. 1, 2012) (same). For example, in Campbell, plaintiff asserted a claim under Section 1681s-2(b), alleging the defendant furnisher failed to conduct a reasonable investigation of the plaintiff's dispute. Id. at *2. Specifically, plaintiff

11

alleged that defendant inaccurately reported a tradeline by failing to indicate that its account had been discharged in plaintiff's previous bankruptcy proceedings. Id. at *1. Plaintiff thereafter submitted a letter to the credit reporting agency, disputing the inaccuracies. Id. However, even after the credit reporting agency forwarded plaintiff's dispute to defendant, the tradeline still appeared in plaintiff's credit report. Id.

Defendant moved to dismiss plaintiff's claim, challenging the sufficiency of her factual allegations. Id. at *4. The court disagreed, reasoning that plaintiff's allegations that defendant "failed to conduct a proper investigation" and "failed to review all relevant information available to it and provided by [the credit reporting agency]" were "sufficient to state a claim with respect to the investigation." Id. The court thus concluded that plaintiff's contentions "permit[ted] the Court to infer that [defendant] could be liable under [Section] 1681s-2(b) for its alleged improper investigation and failure to review, because Plaintiff's February 1, 2019, credit report maintained the same errant Trade Lines from Defendant, despite [the credit reporting agency] forwarding her detailed dispute to [Defendant]." Id.

Similarly, in Wikert, the district court found that plaintiff sufficiently stated a Section 1681s-2(b) claim where she alleged that she notified the credit reporting agency of an error in her credit report; the credit reporting agency notified the defendant furnisher of the disputed information; and plaintiff's new credit report continued to contain the erroneous information. Wikert, 2012 WL 333787, at *2. And courts have emphasized that where "the details of [the defendant furnisher's] investigative procedures are solely within [defendant's] knowledge and cannot be ascertained until Plaintiffs are permitted to engage in discovery," plaintiffs need not "plead specific identifiable facts in support of" allegations that an investigation was unreasonable. Rayburn v. Equifax Info. Servs., LLC, No. 1:18-cv-03127-TCB-CMS, 2019 WL 1225212, at *4 (N.D. Ga. Jan. 9, 2019), report and recommendation adopted, No. 1:18-cv-3127-TCB, 2019 WL 1225204 (N.D. Ga. Feb. 4, 2019) (internal quotations omitted).

Here, like in Campbell and Wikert, Ms. Pullman has pled that she notified the credit reporting agencies of an inaccuracy in her credit report (Doc. # 30 at ¶ 14); the credit reporting agencies notified Wells Fargo of the inaccuracy (Id. at ¶ 16); and thereafter, Ms. Pullman's credit

13

report continued to contain the false tradeline. (Id. at ¶ 17-19); see Campbell, 2019 WL 1332375, at *5 (finding plaintiff's allegations that the defendant furnisher "failed to conduct a proper investigation" and "failed to review all relevant information available to it and provided by [the credit reporting agency] sufficient to state a claim under Section 1681s-2(b)); Wikert, 2012 WL 333787, at *2 (finding sufficient allegations to state a Section 1681s-2(b) claim where the credit reporting agency notified the defendant furnisher of a dispute and thereafter, the erroneous information continued to appear on the plaintiff's credit report). These facts are sufficient to state a claim for a violation of Section 1681s-2(b) and raise a plausible inference of negligence by Wells Fargo in conducting its investigation. See Olivier v. Hunter Warfield, Inc., No. 3:17-cv-399-HLA-JBT, 2019 WL 11504696, at *8 (M.D. Fla. Jan. 9, 2019) (denying a motion to dismiss where the plaintiff alleged that the defendant furnisher received notice of plaintiff's dispute but continued to provide allegedly inaccurate information to the credit reporting agency). While Ms. Pullman's amended complaint does not identify the ways in which Wells Fargo's investigation fell below the standard of care, such specificity is not required at the pleading stage.

14

See Rayburn, 2019 WL 1225212, at *4 (declining to find, at the motion to dismiss stage, that a plaintiff was required to plead "specific identifiable facts in support of" allegations that an investigation was unreasonable). The Court's conclusion comports with the reasoning articulated in Rayburn that, at the pleading stage, the details of a furnisher's investigative procedures are solely within the knowledge of the furnisher. Id.

The Court denies Wells Fargo's Motion as to Count I.

### ii. **Willful Violation**

Ms. Pullman also alleges that Wells Fargo's failure to conduct a reasonable investigation of her dispute was willful, entitling her to damages under 15 U.S.C. § 1681n. (Doc. # 30 at ¶¶ 30, 33). Wells Fargo contends that Ms. Pullman has pled her allegations in a conclusory fashion, and that more information about the content of her dispute and Wells Fargo's investigation are needed. (Doc. # 34 at 9-10). Specifically, according to Wells Fargo, Ms. Pullman's amended complaint is deficient because her "only factual allegation to support [her FCRA claims] is that the alleged false tradelines still appeared on her credit disclosures after submitting her dispute." (Doc. # 34 at 10).

Section 1681n entitles a consumer to recover damages, including punitive damages, from anyone who "willfully fails to comply with any requirement imposed under this subchapter[.]" 15 U.S.C. § 1681n(a)(1)-(3). A company willfully violates the FCRA when it "knowingly or recklessly violate[s]" the statute. Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 760 (9th Cir. 2018) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)).

Conditions of the mind, such as knowledge, may be alleged generally at the pleading stage. Fed. R. Civ. P. 9(b). Thus, courts have found a willful violation of the FCRA sufficiently alleged where a plaintiff's allegations included that "there was a fairly obvious error on her credit report, and despite being made aware of the error, [the credit reporting agency] did not fix it." Ellis v. Equifax Info. Servs., LLC, No. 1:18-CV-5185-TCB-CMS, 2019 WL 3503538, at *5 (N.D. Ga. June 6, 2019), report and recommendation adopted, No. 1:18-CV-5185-TCB, 2019 WL 5406558 (N.D. Ga. June 25, 2019); see also Hamm v. Equifax Info. Servs. LLC, No. CV-17-03821-PHX-JJT, 2018 WL 3548759, at *4 (D. Ariz. July 24, 2018) (finding a claim for willfulness sufficiently stated where the plaintiff alleged that the defendant "willfully failed to conduct a reasonable reinvestigation").

At the pleading stage, Ms. Pullman has sufficiently stated a claim for a willful violation of Section 1681s-2(b). She alleges that after being informed that she was the victim of identity theft, which led to a false tradeline appearing on her credit report, Wells Fargo nevertheless failed to remove the false tradeline. (Doc. # 30 at ¶¶ 9, 14, 16, 18-19). Assuming the truth of these allegations, alongside Ms. Pullman's allegation that the violation was willful (Id. at ¶ 30), the Court can infer that Wells Fargo's failure to conduct a reasonable investigation was willful. See Williams v. Credit One Bank, N.A., No. 1:19-CV-949-MHC-JKL, 2019 WL 11502903, at *10 (N.D. Ga. Dec. 26, 2019) (noting that at the pleading stage, the plaintiff lacks the benefit of discovery and the ability to allege more specific facts regarding the furnisher's recklessness or willfulness), report and recommendation adopted, No. 1:19-CV-949-MHC-JKL, 2020 WL 7408762 (N.D. Ga. Jan. 16, 2020). Indeed, Ms. Pullman alleges that Wells Fargo failed to direct the credit reporting agencies to delete the false tradeline, despite Ms. Pullman sending a copy of the police report as part of her dispute. (Doc. # 30 at ¶¶ 14-15). Such a failure on Wells Fargo's part, at the pleading stage, is sufficient for Ms. Pullman to state a claim for willful conduct under Section 1681n. See Ellis,

17

2019 WL 3503538, at *5 (finding a willful violation of the FCRA sufficiently pled where the credit reporting agency failed to fix a "a fairly obvious error on [the plaintiff's] credit report").

The Court denies Wells Fargo's Motion as to Count II. Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Wells Fargo's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 34) is **DENIED.**

(2) Wells Fargo's answer to the amended complaint is due within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of May, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE